UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,             :    INFORMATION

       -v.-                           :    16 Cr. _____

CAYMAN NATIONAL SECURITIES LTD. and   :
CAYMAN NATIONAL TRUST CO. LTD.,
                                        :
          Defendants.

JUDGE GRIESA

16 CRIM 195

- - - - - - - - - - - - - - - - - - - x

### COUNT ONE
(Conspiracy)

The United States Attorney charges:

#### The Defendants

1. At all times relevant to this Information, CAYMAN NATIONAL SECURITIES LTD. ("CNS") and CAYMAN NATIONAL TRUST CO. LTD. ("CNT"), the defendants, were located in Grand Cayman, Cayman Islands, and were organized under the laws of the Cayman Islands.

2. At all times relevant to this Information, CNS and CNT, the defendants, respectively, provided investment brokerage, company, and trust management services to individuals and entities within and outside the Cayman Islands, including U.S. taxpayers in the Southern District of New York.

#### Overview of the Conspiracy

3. From at least in or about 2001, up through and including in or about 2011, CNS and CNT, the defendants, and others

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 0 9 2016

known and unknown, conspired with numerous citizens and residents of the United States who had income in any one calendar year in excess of a threshold amount ("U.S. taxpayers") to defraud the United States, to conceal from the IRS the existence of accounts maintained at CNS and CNT and the income earned in these accounts (hereafter "the undeclared accounts"), and to evade U.S. taxes on income generated in the undeclared accounts. At their peak in or around 2009, CNS and CNT conspired with U.S. taxpayers to hide at least $137 million in assets from the IRS in undeclared accounts at CNS and CNT.

4. In furtherance of the conspiracy, CNS and CNT, the defendants, among other things, opened, and/or encouraged many U.S. taxpayer-clients to open, accounts held in the name of sham Caymanian companies and trusts (collectively, "structures"), thereby helping U.S. taxpayers conceal their beneficial ownership of the accounts; CNS and CNT treated these sham Caymanian structures as the account holders; CNS allowed the U.S. beneficial owners of the accounts to trade in U.S. securities, and failed to disclose to the IRS the identities of the U.S. beneficial owners who were trading in U.S. securities, in contravention of its obligations under its Qualified Intermediary Agreement ("QI") with the IRS; and CNS and CNT retained account statements relating to undeclared accounts for certain U.S. taxpayer-clients, rather than sending those statements to the U.S. taxpayer-clients' addresses in the United States.

## Obligations of U.S. Taxpayers
## With Respect to Foreign Financial Accounts

5.  At all times relevant to this Information, U.S. taxpayers were required to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the Internal Revenue Service ("IRS"). On Form 1040, U.S. taxpayers were obligated to report their worldwide income, including income earned in foreign bank accounts. In addition, when a U.S. taxpayer completed Schedule B of Form 1040, he or she was required to indicate whether "at any time during [the relevant calendar year]" the filer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account," and if so, the U.S. taxpayer was required to name the country.

6.  In addition, U.S. taxpayers who had a financial interest in, or signature or other authority over, a foreign bank account with an aggregate value of more than $10,000 at any time during a particular calendar year were required to file a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR") on or before June 30 of the following year. In general, the FBAR required that the U.S. taxpayer filing the form identify the financial institution with which the financial account was held, the type of account (either bank, securities, or other), the account

3

number, and the maximum value of the account during the calendar year for which the FBAR was being filed.

7. The 2011 regulations relating to the required disclosure of foreign bank accounts specifically preclude U.S. taxpayers from having foreign accounts nominally held by sham corporate structures as a means of avoiding disclosure. Specifically, as set forth in Title 31, Code of Federal Regulations, Section 1010.350(e)(3):

> A United States person that causes an entity, including but not limited to a corporation, partnership, or trust, to be created for a purpose of evading this section [requiring generally the disclosure of offshore financial accounts containing over $10,000 and over which a U.S. taxpayer has signature or other authority] shall have a financial interest in any bank, securities, or other financial account in a foreign country for which the entity is the owner of record or holder of legal title.

### Means and Methods of the Conspiracy

8. Among the means and methods by which CNS and CNT, the defendants, and their co-conspirators carried out the conspiracy were the following:

   a. CNS and CNT opened and managed for U.S. taxpayer-clients securities and trust accounts at CNS and CNT, respectively, that were not reported on Forms 1040, FBARs, or otherwise, and the income from which was also not reported to the IRS.

   b. CNS and CNT opened, and/or encouraged many U.S.

4

taxpayer-clients to open, undeclared accounts at CNS and CNT held in the name of sham Caymanian structures, thereby allowing U.S. taxpayers to conceal their beneficial ownership of such assets.

        c.   CNS and CNT retained account statements relating to undeclared accounts for certain U.S. taxpayer-clients, rather than sending those statements to the U.S. taxpayer-clients' addresses in the United States.

        d.   Various U.S. taxpayer-clients of CNS and CNT, including taxpayer-clients in New York, New York, filed false Forms 1040 that failed to report their interest in, and income earned from, their undeclared CNS and CNT accounts; evaded income taxes due and owing; and failed to file FBARs identifying their undeclared accounts.

## Statutory Allegations

9.   From at least in or about 2001, up through and including in or about 2011, in the Southern District of New York and elsewhere, CNS and CNT, the defendants, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States of America and an agency thereof, to wit, the IRS, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Sections 7206(1) and 7201.

10. It was a part and an object of the conspiracy that CNS and CNT, the defendants, together with others known and unknown, willfully and knowingly would and did defraud the United States of America and the IRS for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, to wit, federal income taxes.

11. It was further a part and an object of the conspiracy that various U.S. taxpayer-clients of CNS and CNT, the defendants, together with others known and unknown, willfully and knowingly would and did make and subscribe returns, statements, and other documents, which contained and were verified by written declarations that they were made under the penalties of perjury, and which these U.S. taxpayer-clients, together with others known and unknown, did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

12. It was further a part and an object of the conspiracy that CNS and CNT, the defendants, together with others known and unknown, willfully and knowingly would and did attempt to evade and defeat a substantial part of the income tax due and owing to the United States of America by certain of CNS's and CNT's U.S. taxpayer clients, in violation of Title 26, United States Code, Section 7201.

## Overt Acts

13. In furtherance of the conspiracy and to effect the illegal objects thereof, CNS and CNT, the defendants, and others known and unknown, including CNS advisors and CNT trust officers acting within the scope of their employment with CNS and CNT, respectively, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

   a. On or about March 14, 2001, the then-president of CNS submitted a report to CNS's Board of Directors, in which he/she noted that "most US persons were unwilling to complete" a Form W-9, which would have revealed to the IRS the existence of their accounts at CNS.

   b. Beginning in or about 2001 and continuing through at least in or about 2008, CNS advisors referred certain U.S. taxpayer-clients to CNT for the creation of sham Caymanian structures that would serve as nominal account holders for their accounts, thus circumventing the Form W-9 requirement.

   c. Beginning in or about 2001 and continuing through at least in or about 2008, CNT trust officers created sham Caymanian structures for U.S. taxpayer-clients, which were only nominally controlled by the CNT trust officers, and which the U.S. taxpayer-clients used to shield their assets from detection by the IRS.

        d.    In or about 2008, after learning about the investigation of Swiss bank UBS AG for assisting U.S. taxpayers to evade their U.S. tax obligations, CNS and CNT continued to assist U.S. taxpayer-clients in concealing their accounts from the IRS, and did not begin to engage in any significant remedial efforts with respect to those accounts until 2011 and 2012.

        (Title 18, United States Code, Section 371.)

*/s/ Preet Bharara*
PREET BHARARA
United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

CAYMAN NATIONAL SECURITIES LTD. and
CAYMAN NATIONAL TRUST CO. LTD.,

Defendants.

INFORMATION

16 Cr. _____

(18 U.S.C. § 371)

PREET BHARARA
United States Attorney.